**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BENJAMIN APONTE-CRUZ,                :
                                     :   Civil Action No. 11-1531 (RBK)
                    Petitioner,      :
                                     :
          v.                         :   **OPINION**
                                     :
DONNA ZICKEFOOSE,                    :
                                     :
                    Respondent.      :


**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Benjamin Aponte-Cruz
FCI Manchester
Manchester, KY 40962-4000

Counsel for Respondent
Irene E. Dowdy
Assistant United States Attorney
P.O. Box 2098
Camden, NJ 08101


**KUGLER**, District Judge

     Petitioner Benjamin Aponte-Cruz, a prisoner previously

confined at the Federal Correctional Institution at Fort Dix, New

Jersey,[1] has submitted a petition for a writ of habeas corpus

---

     [1] After this Petition was filed, Petitioner was transferred
to the Federal Correctional Institution at Manchester, Kentucky.

pursuant to 28 U.S.C. § 2241.[2]  The sole respondent is Warden
Donna Zickefoose.

Because it appears from the parties' submissions that
Petitioner is not entitled to relief, the Petition will be
denied.

## I.  BACKGROUND

On March 25, 1999, Petitioner was arrested by local
authorities in the Commonwealth of Puerto Rico on weapons
charges.  On April 27, 2000, the Superior Court, Carolina, Puerto
Rico, sentenced Petitioner to a total term of five years'
imprisonment pursuant to his conviction on four violations of
weapons laws, including carrying a loaded firearm without a
license.  Records of the Puerto Rico Department of Corrections
reflect that Petitioner entered its custody on June 1, 2000.[3]

---

[2] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the
Supreme Court, any justice thereof, the district courts
and any circuit judge within their respective
jurisdictions.
(c) The writ of habeas corpus shall not extend to a
prisoner unless-- ... (3) He is in custody in violation
of the Constitution or laws or treaties of the United
States ... .

[3] To date, Petitioner has not provided any evidence to the
Court that he remained in the custody of local authorities
between his arrest on March 25, 1999, and his entry into the
Puerto Rico Department of Corrections custody on June 1, 2000.
Indeed, Petitioner does not even identify the correctional
facility in which he was purportedly confined.  In her Answer,
Respondent asserts that the Bureau of Prisons has contacted local
Puerto Rico authorities and reviewed records available on a local

On November 6, 2000, Petitioner and several co-defendants were indicted in the United States District Court for the District of Puerto Rico on drug and weapons charges.  See United States v. Aponte-Cruz, Criminal No. 00-0861 (D.P.R.). Superceding indictments were issued on January 31, 2001, and June 20, 2001.  Count One of the second superceding indictment charged Petitioner and others with Drug Trafficking Conspiracy, in violation of 21 U.S.C. § 846.[4]  Count Two charged Petitioner and others with conspiracy to possess, carry, and use firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(o).  Count Three charged Petitioner and others with possessing, carrying, and using firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).[5]

---

secure website, and to date have located only documentation reflecting that Petitioner entered local custody of the Puerto Rico Department of Corrections on June 1, 2000.  No earlier custody records have been located.  Petitioner did not file a reply presenting any contrary evidence of earlier custody with the local Puerto Rico authorities.

[4] Petitioner was alleged to have committed overt acts in furtherance of this conspiracy occurring on or about March 25, 1999, (the date of his arrest by local Puerto Rico authorities), and May 4, 1999, and June 4, 1999 (dates after his arrest by local Puerto Rico authorities and before his conviction on the local Puerto Rico charges).  Those overt acts included the possession of certain firearms (on all three dates) and participation in a murder (on May 4, 1999).

[5] Count Three alleged an offense date of May 4, 1999, again a date between Petitioner's arrest and conviction on local Puerto Rico charges.

On July 11, 2002, a plea agreement was filed and a change of plea hearing was conducted by a United States Magistrate Judge who recommended that Petitioner's plea of guilty to Counts One and Three be accepted.  On August 15, 2002, the District Court accepted Petitioner's plea of guilty to Counts One and Three. The Pre-Sentence Investigation Report was filed on November 6, 2002.

On November 13, 2002, Petitioner appeared for sentencing. At that time, Petitioner's counsel advised the Court that Petitioner had not been able to "get a specific basis" for the 150 kilogram quantity of cocaine allegedly involved in the conspiracy.  The District Court ordered Petitioner's counsel to file any desired motion regarding the amount of drugs, then in dispute, as well as the consequences that might have for Petitioner's plea and sentence.  (Answer, Decl. of Counsel, Ex. 4, Tr. of Sentencing Hearing at 4-8 (Nov. 13, 2002)).

On November 25, 2002, Petitioner's counsel filed an "informative motion" regarding the amount of drugs and the consequences on the plea and sentence.  On December 10, 2002, the District Court denied that motion.

Also on December 10, 2002, Petitioner appeared again for sentencing.[6]  In response to a question from the Court, both

---

[6] Between February 7, 2001, and April 16, 2003, Petitioner was in the "borrowed" custody of federal authorities pursuant to a writ of habeas corpus ad prosequendum.

parties confirmed that they had received the Court's order
denying the "informative motion."  Petitioner's counsel confirmed
that he was satisfied with the Pre-Sentence Investigation Report,
other than the matter raised in the "informative motion"
regarding the amount of drugs.  Similarly, Petitioner personally
confirmed that he understood his counsel's explanation of the
Pre-Sentence Investigation Report and that he was satisfied with
the PSI.  Petitioner and his counsel advised the Court that they
know of no reason why sentencing should be postponed.  (Answer,
Decl. of Counsel, Ex. 5, Tr. of Sentencing Hearing (Dec. 10,
2002).)  Thereafter, the Court pronounced sentence as follows:

> THE COURT: Mr. Aponte, this is the sentence of Court.
> On July 11, 2002, defendant Benjamin Aponte Cruz, known
> also as Benji, pled guilty to Count 1 and 3 of a six
> count second superseding indictment in Criminal Case
> No. 00-861, charging him with violation of Title 21,
> U.S. Code, Section 841(a)(1), Title 18, U.S. Code,
> Section 924(c)(1)(A)(1).
>
> Count 3 is precluded from guideline application as
> the statute mandates a fixed consecutive imprisonment
> term of 5 years.
>
> Based on the provision of Guideline Section
> 2D1.1(c), a base offense level of 38 has been
> determined as to offense of conviction in Count 1
> involved at least 150 kilograms of cocaine.  Defendant
> has timely accepted responsibility for his involvement
> in the offense conduct, therefore a three level
> decrease is warranted under Guideline Section 3E1.1(a)
> and (b).  There are no other applicable guideline
> adjustments.
>
> Based on a total offense of [38] and a Criminal
> History Category of II, the guideline imprisonment
> range in this particular case is from 188 to 235
> months, with a fine range of 20,000 to 4 million, plus

5

> a supervised release term of at least five years as to
> Count 1, and at least two but not more than three years
> as to Count 3.
>
> The Court in imposing sentence has considered the
> defendant's personal background, the nature of the
> offenses committed, and the plea agreement between the
> parties.  The Court finds that the terms stipulated by
> the parties is sufficient to address sentencing
> objectives of just punish[ment] and deterrence.
>
> Accordingly, it is the judgment of the Court the
> defendant is hereby committed to the custody of the
> Bureau of Prisons to be imprisoned for a term of 188
> months as to Count 1, and 60 months as to Count 3 to be
> served consecutively to the sentence imposed in Count
> 1, for a total of 248 months of imprisonment.
>
> This term of imprisonment is to be served
> concurrently with the sentence imposed in April 27,
> 2000, at the Court of First Instance, Superior Court at
> Carolina, Puerto Rico.

(Answer, Decl. of Counsel, Ex. 5, Tr. of Sentencing Hearing at

4-6 (Dec. 10, 2002).)  The Court dismissed Count Two; Petitioner

also was advised of his right to appeal the sentence within ten

days; and counsel for Petitioner advised the Court that there

were no remaining matters to be addressed.  The Judgment entered

thereafter provides:

> The defendant is hereby committed to the custody of the
> United States Bureau of Prisons to be imprisoned for a
> total term of 188 MONTHS AS TO [COUNT] ONE AND 60
> MONTHS AS TO COUNT THREE (3) TO BE SERVED CONSECUTIVELY
> TO THE SENTENCE IMPOSE IN COUNT ONE FOR A TOTAL OF 248
> MONTHS.  THIS TERM OF IMPRISONMENT TO BE SERVED
> CONCURRENTLY WITH THE SENTENCE IMPOSED ON APRIL 27,
> 2000 AT THE COURT OF FIRST INSTANCE SUPERIOR COURT,
> CAROLINA, PUERTO RICO.

(Answer, Decl. of Kimmela O. Boyd, Att. 3.)

6

On April 16, 2003, Petitioner was returned to state authorities where he satisfied his five-year state sentence on September 2, 2004.  Petitioner was then transferred to federal authorities for service of his federal sentence.[7]

Because the U.S. District Court had ordered that Petitioner's federal sentence was to run concurrently with the sentence previously imposed by the Commonwealth of Puerto Rico on April 27, 2000, the Bureau of Prisons nunc pro tunc designated the Puerto Rico Department of Corrections as a place for serving Petitioner's federal sentence.[8]  Accordingly, the BOP computed Petitioner's federal sentence as commencing on December 10, 2002, the date the federal sentence was imposed, and granted Petitioner credit against his federal sentence for every day since December 10, 2002.  The BOP calculates that Petitioner's projected release date, assuming accrual of all good conduct time, is December 10, 2020.

---

[7] From July 26, 2006, to March 20, 2007, Petitioner was temporarily transferred to Puerto Rico on a state writ.  There is no dispute with respect to the crediting of that time against Petitioner's federal sentence.

[8] See Barden v. Keohane, 921 F.2d 476(3d Cir. 1991) (the Bureau of Prisons can, in its discretion, designate a state prison as a place of federal confinement nunc pro tunc).  Where a prisoner is already in state custody when a federal sentence is imposed to run concurrently, this has the beneficial effect for the prisoner of achieving concurrency from the date that the federal sentence is imposed, instead of delaying concurrency until the prisoner satisfies his state sentence and is released to the U.S. Bureau of Prisons.

Here, Petitioner asserts that he is entitled to <u>Willis</u>[9] credit against his federal sentence for the period from his arrest on local charges to the date of sentencing on his local charges, March 25, 1999, to April 27, 2000.  Petitioner also asserts that he is entitled to credit from the date of his local sentencing to the date of his federal sentencing, from April 27, 2000, to December 10, 2002, on the ground that the federal sentencing court intended to make his federal sentence <u>retroactively</u> concurrent to the beginning of the state sentence by making an adjustment pursuant to United States Sentencing Guideline 5G1.3(b).  Respondent has answered that Petitioner is not entitled to either of these credits.  Petitioner did not reply.[10]  This matter is now ready for decision.

II.  <u>ANALYSIS</u>

A.  <u>BOP Sentence Calculation Regulations</u>

The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, <u>United States v. Wilson</u>, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and the Attorney General has delegated that authority to the Director of the Bureau of Prisons, 28 C.F.R. § 0.96 (1992).

---

[9] <u>See</u> <u>Willis v. United States</u>, 438 F.2d 923 (5th Cir. 1971).

[10] Petitioner has filed a Motion [15] for judgment on the pleadings.

Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination of, first, the date on which the federal sentence commences and, second, the extent to which credit is awardable for time spent in custody prior to commencement of the sentence.

(a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(a), (b).

B.   "Willis" Credits

Petitioner asserts that he is entitled to "Willis" credits from the date of his local arrest, March 25, 1999, to the date of his local sentencing, April 27, 2000.

Pursuant to Willis v. United States, 438 F.2d 923 (5th Cir. 1971), as written into the relevant BOP Program Statement, where a federal sentence is imposed to run concurrently to a state

sentence, and the federal sentence is to run longer than the
state sentence (not counting any credits):

> Prior custody credits shall be given <u>for any time spent
> in non-federal presentence custody</u> that begins on or
> after the date of the federal offense up to the date
> that he first sentence begins to run, federal or
> non-federal.

P.S. 5880.28(2)(c) (emphasis added).  Here, however, Petitioner
has not established that he actually was in state custody during
the period between March 25, 1999 and April 27, 2000.  To the
contrary, records of the Puerto Rican authorities reflect that
Petitioner did not enter state custody until June 1, 2000.
Moreover, Petitioner pleaded guilty to federal offenses that put
him on the street on May 4, 1999, and June 4, 1999, dates after
his local Puerto Rico arrest.  Accordingly, Petitioner has failed
to establish his right to "Willis" credits.[11]  This claim will be
denied.

C.   <u>U.S.S.G. 5G1.3(b)</u>

Petitioner also asserts that he is entitled to credit for
the period between his local sentencing on April 27, 2000, and
the date of his federal sentencing, on December 10, 2002,[12] on
the ground that the federal sentencing court intended to make the

---

[11] The Court notes that Respondent has indicated that the
government is continuing to investigate this matter.  If records
are located reflecting that Petitioner was confined prior to the
date his local sentence was imposed, he may file a new petition.

[12] Again, the Court notes that there is no evidence that
Petitioner was confined between April 27, 2000, and June 1, 2000.

federal sentence retroactively concurrent to the state sentence by making an adjustment pursuant to United States Sentencing Guideline 5G1.3(b).[13]  Petitioner cites to Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), a 5G1.3(c) case, in support of this argument.

---

[13] Section 5G1.3(b) provides that:

If ... a term of imprisonment resulted from another offense that is relevant conduct to the instant offense ... and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

To the extent Petitioner contends that he was entitled to a Section 5G1.3(b) adjustment, he should have appealed the sentence.  Based upon Petitioner's citation to Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), this Court construes the Petition as asserting a claim that the federal sentencing court intended an adjustment pursuant to 5G1.3(c).

In any event, it does not appear that Petitioner was entitled to a 5G1.3(b) adjustment, as the federal offenses include a murder and other offenses that took place after the date of Petitioner's arrest on local charges.  In addition, there is no evidence that the state offense led to an increase in the federal offense level, which is directly tied to the quantity of cocaine involved in the federal offenses.

The Court of Appeals held, in <u>Ruggiano v. Reish</u>, that a federal sentencing court has authority under 18 U.S.C. § 3584 and USSG 5G1.3(<u>c</u>)[14] to order a federal sentence to be fully and retroactively concurrent to a state sentence that the defendant was already serving.  The imposition of a retroactively concurrent sentence under § 5G1.3(c) is more properly termed an "adjustment," rather than a credit or downward departure.  <u>Id.</u> at 133.[15]

Notably, in <u>Ruggiano</u>, the sentencing judge stated "that he thought it appropriate to go ahead and recommend that 'Ruggiano's sentence' be served concurrently and that he receive credit for the amount of time that he served there."  307 F.3d at 124. "Then, in his written judgment, [the sentencing judge] recited that Ruggiano's sentence was to 'run concurrent with State sentence.  Defendant to receive credit for time served.'"  <u>Id.</u> The Third Circuit found that this language conveyed an intent of

---

[14] Section 5G1.3(<u>c</u>) provides that:

> (Policy Statement)  In any other case involving an undischarged term of imprisonment, the sentence for the instance offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable adjustment for the instant offense.

[15] A 2003 amendment to the 5G1.3 Application Notes provides that subsection (c) does not authorize an adjustment for time served on prior undischarged term of imprisonment, but that a sentencing court may consider a downward departure in extraordinary cases.

the sentencing judge to grant an adjustment by making the federal sentence retroactively concurrent for the entire period of the state sentence pursuant to § 5G1.3(c).

Here, by contrast, the oral pronouncement of sentence as well as the written judgment make clear that the federal sentencing judge had no intent to make a Ruggiano-type adjustment.  There is no discussion whatsoever of credit for time served.  Nor is there any other suggestion, anywhere in the record, that Petitioner sought such an adjustment or that the trial court intended to go beyond the normative concurrent sentence in order to impose a sentence that was retroactively concurrent to the state sentence.  Petitioner is not entitled to relief on this claim.  See Thomas v. Schultz, Civil No. 10-5162, 2012 WL 5200034 (D.N.J. Oct. 22, 2012).

### III.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


S/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: November 15, 2012